**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FLESHIA SHUMPERT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:24-cv-6800 |
| v. | ) | |
| | ) | |
| DANIEL T. HOELTGEN, M.D., | ) | |
| BARRINGTON SURGEONS, LTD, | ) | JURY TRIAL DEMANDED |
| CHRISTOPHER T. MOLITOR, M.D. | ) | |
| ADVOCATE HEALTH AND HOSPITALS | ) | |
| CORPORATION d/b/a ADVOCATE | ) | |
| MEDICAL GROUP, ADVOCATE CONDELL | ) | |
| MEDICAL CENTER and BEST PRACTICES | ) | |
| INPATIENT CARE, LTD., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AT LAW

Plaintiff, FLESHIA SHUMPERT, complains of Defendants, Barrington Surgeons, Ltd.,

Advocate Health and Hospitals Corporation d/b/a Advocate Medical Group, Advocate Condell

Medical Center, and Best Practices Inpatient Care, Ltd. (hereinafter collectively referred to as

"Defendants"), as follows:

### Nature of the Case

1. Plaintiff files this action to recover damages proximately caused by the negligent

and substandard healthcare services and treatment provided by Defendants, their agents, servants,

employees and representatives.

2. Portions of the medical and nursing services, care, treatment and advice provided

to Fleshia Shumpert beginning on or about May 14, 2022 and continuing up to and including July

28, 2022, fell below the standards of ordinary care and practice acceptable to and required of

1

physicians and health care providers practicing under the same or similar circumstances, and were a proximate cause of her injuries and damages.

**Parties**

3.      Plaintiff Fleshia Shumpert (hereinafter referred to as "Ms. Shumpert") is a citizen and resident of Amory, Monroe County, Mississippi.

4.      Daniel T. Hoeltgen, M.D. (hereinafter referred to as "Hoeltgen") is an individual/natural person, an Illinois resident, and a physician duly licensed in the state of Illinois.

5.      Defendant Barrington Surgeons, Ltd. (hereinafter referred to as "Barrington") is a domestic BCA corporation organized under the laws of the State of Illinois and maintains its principal place of business in Barrington, Lake County, Illinois. Defendant Barrington is a medical group practice that offers a full range of bariatric surgery options to support weight loss.

6.      Christopher T. Molitor, M.D. (hereinafter referred to as "Molitor") is an individual/natural person, an Illinois resident, and a physician duly licensed in the state of Illinois.

7.      Defendant Advocate Health and Hospitals Corporation d/b/a Advocate Medical Group (hereinafter referred to as "Advocate Medical Group") is a not-for-profit corporation organized under the laws of the State of Illinois and provides primary medical care, specialty services, medical imaging and other outpatient medical services in Lake Villa, Lake County, Illinois.

8.      Defendant Advocate Condell Medical Center (hereinafter referred to as " Advocate Condell") is a not-for-profit corporation organized under the laws of the State of Illinois and maintains its principal place of business in Libertyville, Lake County, Illinois. Defendant Advocate Condell is an acute care hospital offering a full spectrum of medical services.

9.     Defendant Best Practices Inpatient Care, Ltd. (hereinafter referred to as "Best Practices") is a domestic BCA corporation organized under the laws of the State of Illinois and maintains its principal place of business in Long Grove, Lake County, Illinois. Defendant Best Practices provides inpatient physician care to hospitalized patients for physician practices and specialty hospitals in Illinois.

## Jurisdiction and Venue

10.     Jurisdiction in this case arises under 28 U.S.C. § 1332, based on diversity of citizenship between the Plaintiff and the Defendants, and the amount in controversy exceeding seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and (c) because Defendants conduct business in this judicial district, and thus are subject to personal jurisdiction in this judicial district.

## Factual Allegations

12.     On May 11, 2022, Dr. Daniel T. Hoeltgen performed a laparoscopic sleeve gastrectomy with intraoperative upper endoscopy and posterior paraoesophageal hiatal hernia repair on Ms. Shumpert.

13.     On May 24, 2022, Ms. Shumpert presented to the Emergency Department of Advocate Good Shepherd Hospital.

14.     The records from May 24, 2022 reflect that Ms. Shumpert had been unable to tolerate anything PO without vomiting.

15.     Fleshia Shumpert was discharged by Dr. Hoeltgen on May 27, 2022.

16.     At no time during the May 24, 2022 hospitalization did Dr. Hoeltgen prescribe or administer thiamine.

3

17.    On June 7, 2022, Ms. Shumpert was seen by her primary physician, Dr. Christopher T. Molitor.

18.    The history recorded in the records at the June 7, 2022 visit indicated that she had been having "nausea, vomiting, heartburn, dizziness".

19.    The records from June 7, 2022 reflect that Fleshia Shumpert reported, "'extreme dizziness'" occasionally. She thinks it could be due to not eating well."

20.    Dr. Molitor did not order or administer thiamine on June 7, 2022.

21.    On July 14, 2022, Fleshia Shumpert saw Dr. Molitor.

22.    The records reflect a history of, "Nausea and vomiting, unspecified vomiting type: Complains of nausea and vomiting from the time she had her bariatric surgery."

23.    Dr. Molitor did not order or administer thiamine on July 14, 2022.

24.    On July 14, 2022, Fleshia Shumpert presented to Advocate Infusion Center for administration of 2L normal saline which had been ordered by Dr. Hoeltgen on July 12, 2022.

25.    On July 18, 2022, Dr. Hoeltgen ordered 2L 0.9% normal saline.

26.    On July 19, 2022, Fleshia Shumpert presented to Advocate Infusion Center for administration of 2L 0.9 % normal saline.

27.    At no time during his treatment of Fleshia Shumpert did Dr. Hoeltgen order or administer thiamine to Fleshia Shumpert.

28.    On July 22, 2022, Fleshia Shumpert was admitted to Advocate Condell Medical Center. Records reflect that she had lost approximately 60 pounds and reported that she had been vomiting and that for the past 2 weeks she had some vertiginous symptoms.

29.     The records of Advocate Condell Medical Center reflect that during the hospitalization of July 22, 2022, Fleshia Shumpert was assessed by Nicolette Cierpiala, RD and Leah Woock, RD.

30.     During the hospitalization of July 22, 2022, the records reflect that Fleshia Shumpert was followed by healthcare providers employed by Best Practices Inpatient Care, Ltd.

31.     Providers who provided medical care during the July 22, 2022, admission to Advocate Condell Medical Center, include, but are not limited to, Advocate Condell Medical Center, Maya Gherman, CNP, Kimberly Nicholson, CNP, Amy Christine Wlodek, CNP, Mazin Fattouhi, MD, (assigned as attending), Carla Denise Chonillo, MD, and Richard Baker, MD.

32.     Fleshia Shumpert developed nystagmus on July 26, 2022, and continued with weakness, abnormal gait and vertigo until she was discharged on July 28, 2022.

33.     At no time during the hospitalization of July 22, 2022 was Fleshia Shumpert given thiamine.

34.     On August 11, 2022, Neurologist, Dr. Nell Madkarni, suspected Fleshia Shumpert had multifactorial vitamin deficiency causing Wernicke's Encephalopathy-Korsakoff Syndrome as well as admixed B12 deficiency given recent sleeve gastrectomy and inability to tolerate PO solid food for months causing myeloneuropathic process as well as, specifically, amnestic process.

35.     On August 15, 2022, Dr. Anub Abraham diagnosed Fleshia Shumpert with Wernicke's Encephalopathy and Korsakoff Syndrome.

## Count I - Dr. Hoeltgen, Barrington Surgeons, Ltd.

36.     Dr. Hoeltgen provided medical care up to and including Fleshia Shumpert's bariatric surgery on May 11, 2022. Ms. Shumpert presented multiple times at the hospital, at Dr. Hoeltgen's office as well as her PCP's office, with complaints of nausea, vomiting, and inability

to take anything by mouth. Dr. Hoeltgen attended to her for the hospitalizations that she had in May and June. He ordered infusion therapy on or about July 12, 2022 and July 18, 2022, for her complaints of nausea, vomiting, extreme dizziness and low blood pressure.

37.     At all relevant times, Dr. Daniel Hoeltgen was an actual or apparent agent of Barrington Surgeons, Ltd.

38.     Defendants Dr. Hoeltgen and Barrington Surgeons, Ltd., were negligent in that they failed to order and/or administer thiamine to the plaintiff.

39.     As a proximate result of the negligence of defendants, Fleshia Shumpert suffered injuries of a personal and pecuniary nature.

### Count II - Dr. Molitor and Advocate Medical Group

40.     At all relevant times, Dr. Christopher Molitor was an actual or apparent agent of Advocate Medical Group.

41.     Dr. Molitor provided care on June 7, 2022 and July 14, 2022.

42.     Dr. Molitor was an actual or apparent agent of Advocate Medical Group.

43.     Dr. Molitor was the primary care physician who treated Fleshia Shumpert for complaints of weakness, extreme weight loss, dizziness and vomiting.

44.     Defendants Dr. Molitor and Advocate Medical Group were negligent in that they failed to order and/or administer thiamine to the plaintiff.

45.     As a proximate result of the negligence of defendants, Fleshia Shumpert suffered injuries of a personal and pecuniary nature.

### Count III - Advocate Condell Medical Center

46.     On July 22, 2022, Fleshia Shumpert presented to the Emergency Department of Advocate Condell Medical Center where she has a history of gastric sleeve and hiatal hernia repair

on May 11 and since that time has been vomiting. She reported vertiginous symptoms for the last 2 weeks. Diet had not advanced beyond clear liquids. Ms. Shumpert was admitted.

47.     Maya Gherman, CNP, evaluated Ms. Shumpert as the hospitalist but did not consider nutritional deficiency in the differential nor did she order thiamine repletion.

48.     Kimberly Nicholson, CNP, saw Ms. Shumpert on July 25, 2022, and noted continued vertigo, but did not consider thiamine deficiency, nor did she order thiamine.

49.     On July 26, 2022, Rita Ramaiya, PT, noted nystagmus and documented this. Also noted patient with nausea, dizziness, room spinning, vertigo. Kimberly Nicholson, CNP, saw Ms. Shumpert on July 26, 2022, and noted "still with vertigo and no changes in plan of care other than PT for vestibular therapy."

50.     On July 27, 2022, Amy Christine Wlodek, CNP, stated patient still complains of room spinning and nystagmus.

51.     Registered dietitians Nicolette Cierpiala, RD, and Leah Woock, RD, evaluated the nutritional status of Fleshia Shumpert but neither ordered and/or administered thiamine at any time.

52.     Dr. Mazin Fattouhi, Dr. Carla Denise Chonillo and Dr. Richard Baker provided medical care and treatment to Fleshia Shumpert. At no time did any of these physicians order and/or administer thiamine at any time.

53.     Defendants Maya Gherman, CNP, Kimberly Nicholson, CNP, Amy Christin Wlodek, CNP, Nicolette Cierpiala, RD, Leah Wook, RD, Dr. Mazin Fattouhi, Dr. Carla Denise Chonillo, and Dr. Richard Baker were actual or apparent agents of Advocate Condell Medical Center.

54.     Defendants Maya Gherman, CNP, Kimberly Nicholson, CNP, Amy Christin Wlodek, CNP, Nicolette Cierpiala, RD, Leah Wook, RD, Dr. Mazin Fattouhi, Dr. Carla Denise Chonillo, and Dr. Richard Baker and Advocate Condell Medical Center were negligent in that they failed to order and/or administer thiamine to the plaintiff.

55.     As a proximate result of the negligence of defendants, Fleshia Shumpert suffered injuries of a personal and pecuniary nature.

### Count IV – Best Practices Inpatient Care, Ltd.

56.     On July 22, 2022, Fleshia Shumpert presented to the Emergency Department of Advocate Condell Medical Center where she has a history of gastric sleeve and hiatal hernia repair on May 11 and since that time has been vomiting. She reported vertiginous symptoms for the last 2 weeks. Diet had not advanced beyond clear liquids. Ms. Shumpert was admitted.

57.     Maya Gherman, CNP, evaluated Ms. Shumpert as the hospitalist but did not consider nutritional deficiency in the differential nor did she order thiamine repletion.

58.     Kimberly Nicholson, CNP, saw Ms. Shumpert on July 25, 2022, and noted continued vertigo, but did not consider thiamine deficiency, nor did she order thiamine.

59.     On July 26, 2022, Rita Ramaiya, PT, noted nystagmus and documented this. Also noted patient with nausea, dizziness, room spinning, vertigo. Kimberly Nicholson, CNP, saw Ms. Shumpert on July 26, 2022, and noted still with vertigo and no changes in plan of care other than PT for vestibular therapy.

60.     On July 27, 2022, Amy Christine Wlodek, CNP, stated patient still complains of room spinning and nystagmus.

61.     Registered dietitians Nicolette Cierpiala, RD, and Leah Woock, RD, evaluated the nutritional status of Fleshia Shumpert but neither ordered and/or administered thiamine at any time.

62.     Dr. Mazin Fattouhi, Dr. Carla Denise Chonillo and Dr. Richard Baker provided medical care and treatment to Fleshia Shumpert. At no time did any of these physicians order and/or administer thiamine at any time.

63.     Defendants Maya Gherman, CNP, Kimberly Nicholson, CNP, Amy Christin Wlodek, CNP, Nicolette Cierpiala, RD, Leah Wook, RD, Dr. Mazin Fattouhi, Dr. Carla Denise Chonillo, and Dr. Richard Baker were actual or apparent agents of Best Practices.

64.     Defendants Maya Gherman, CNP, Kimberly Nicholson, CNP, Amy Christin Wlodek, CNP, Nicolette Cierpiala, RD, Leah Wook, RD, Dr. Mazin Fattouhi, Dr. Carla Denise Chonillo, and Dr. Richard Baker and Best Practices were negligent in that they failed to order and/or administer thiamine to the plaintiff.

65.     As a proximate result of the negligence of defendants, Fleshia Shumpert suffered injuries of a personal and pecuniary nature.

WHEREFORE, Fleshia Shumpert demands judgment against Defendants, Barrington Surgeons, Ltd., Advocate Health and Hospitals Corporation d/b/a Advocate Medical Group, Advocate Condell Medical Center, and Best Practices Inpatient Care, Ltd. for a sum of money in excess of the jurisdictional minimums of this court.

Plaintiff hereby demands a TRIAL BY JURY.

Respectfully submitted,

BY:     /s/Matthew D. Ports
        Attorney for Plaintiff


Matthew D. Ports

9

Gill Ports, Ltd.
One East Wacker Drive, Suite 3310
Chicago, Illinois 60601
312/828-96666
ARDC: 6271390
mports@gillports.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FLESHIA SHUMPERT                         )
                                         )
     Plaintiff,                          )
                                         )     No. <u>1:24-cv-6800</u>
v.                                       )
                                         )
DANIEL T. HOELTGEN, M.D.,                )
BARRINGTON SURGEONS, LTD,                )     <u>JURY TRIAL DEMANDED</u>
CHRISTOPHER T. MOLITOR, M.D.             )
ADVOCATE HEALTH AND HOSPITALS            )
CORPORATION d/b/a ADVOCATE               )
MEDICAL GROUP, ADVOCATE CONDELL          )
MEDICAL CENTER and BEST PRACTICES        )
INPATIENT CARE, LTD.,                    )
                                         )
     Defendants.                         )

### <u>SUPREME COURT RULE 222 AFFIDAVIT</u>

The undersigned, Matthew D. Ports, having been duly sworn on oath, deposes and states that as of this date the total money damages sought in the above-captioned matter exceeds Seventy-Five Thousand Dollars ($75,000.00).


                                /s/ Matthew D. Ports


Subscribed and Sworn to Before Me
This <u>2nd</u> day of <u>August</u>, 2024.

<u>*Meghan Mays*</u>
     NOTARY PUBLIC

```
Official Seal
MEGHAN E MAYS
Notary Public, State of Illinois
Commission No. 893174
My Commission Expires May 30, 2027
```

11

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FLESHIA SHUMPERT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:24-cv-6800 |
| v. | ) | |
| | ) | |
| DANIEL T. HOELTGEN, M.D., | ) | |
| BARRINGTON SURGEONS, LTD, | ) | JURY TRIAL DEMANDED |
| CHRISTOPHER T. MOLITOR, M.D. | ) | |
| ADVOCATE HEALTH AND HOSPITALS | ) | |
| CORPORATION d/b/a ADVOCATE | ) | |
| MEDICAL GROUP, ADVOCATE CONDELL | ) | |
| MEDICAL CENTER and BEST PRACTICES | ) | |
| INPATIENT CARE, LTD., | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF PLAINTIFF'S ATTORNEY

I, Matthew D. Ports, declare under penalty of perjury as follows:

I am one of the attorneys of record for plaintiff.

I have consulted with and reviewed the facts of this case with physicians, whom I believe are knowledgeable in the relevant issues involved in this particular action. Each physician practices in the same area of medicine that is at issue in this action, and actively treat patients with the medical condition that afflicted Fleshia Shumpert. The physicians have determined, in a written report, attached hereto, after reviewing the relevant material involved in this particular action, that there is a reasonable and meritorious cause for filing of this action.

No legal action has been previously filed concerning the incident described in this lawsuit.

I consider the identity of the physicians who signed the attached reports to be confidential and my work-product. I have not yet determined to identify these physicians as an opinion witnesses in the trial of this case, and therefore, they each remain my consultants whose identities are protected by the work-product rule. The attorney work-product privilege, created by the judiciary, cannot be modified, amended, or abrogated by legislation. To the extent that a recent amendment to Code of Civil Procedure section 2-622 implies that the attorneys for plaintiff should identify their attesting physician, that section violates the work-product rule, the separation of powers doctrine and the equal protection guarantees

12

of the Illinois and United States Constitutions. My client and I would be at a distinct litigation disadvantage were I required to disclose the identity of my consulting physician at this time.

FURTHER AFFIANT SAYETH NOT.

/s/ Matthew D. Ports

Subscribed and Sworn to Before Me
This ⏟2nd⏟ day of ⏟August⏟, 2024.

_Meghan Mays_
　　　NOTARY PUBLIC

```
Official Seal
MEGHAN E MAYS
Notary Public, State of Illinois
Commission No. 893174
My Commission Expires May 30, 2027
```

13

July 22, 2024

Kathryn Snapka
**THE SNAPKA LAW FIRM**
500 N. Water St., Suite 700
Corpus Christi, Texas 78401

   Re: Fleshia Shumpert

Dear Ms. Snapka:

  I write to confirm our conversation concerning this case. I am a physician licensed to practice medicine in all its branches. I actively practice in the field of bariatric surgery. I am certified by the American Board of Surgery and American Board of Obesity Medicine. I am familiar with bariatric surgery and managing patients in the perioperative and postoperative period, including appropriate management of nutrition, the standard of care, the methods, the procedures and the treatments relevant to the medical issues in this case.

  I understand this letter is a legal requirement in Illinois to show that the claim is reasonably meritorious. I also understand that this letter is not intended to be a complete statement of all my opinions or reasons for them and that, if I am an opinion witness in this case, I will make a more detailed statement of my opinions and bases as required by Illinois rules.

  I have reviewed the following materials:

    Shumpert 00001 – 00789 Advocate Good Shepherd Hosp–MR
    Shumpert 00790 – 00811 Advocate Good Shepherd Hosp–BR
    Shumpert 00812 – 01390 Advocate Condell Med Ctr–MR
    Shumpert 01391 – 01407 Advocate Condell Med Ctr–BR
    Shumpert 01408 – 01749 Advocate Medical Group–MR
    Shumpert 01750 – 01768 Advocate Medical Group–BR
    Shumpert 01769 – 02574 Advocate Good Shepherd Infusion Ctr–MR
    Shumpert 02575 – 02596 Advocate Good Shepherd Infusion Ctr–BR
    Shumpert 02597 – 03308 Northwestern Medicine Lake Forest Hosp–MR
    Shumpert 03309 – 03342 Northwestern Medicine Lake Forest Hosp–BR
    Shumpert 03343 – 04346 Encompass Health Rehab of Libertyville–MR
    Shumpert 04347 – 04364 The Encompass Health Rehab of Libertyville–BR
    Shumpert 04365 – 05374 Elevate Care Riverwoods–MR
    Shumpert 05375 – 05388 Elevate Care Riverwoods–BR

  Dr. Hoeltgen noted in his discharge summary that for the first two days post-operatively, Fleshia Shumpert had nausea and intermittent episodes of dysphagia. By the morning of post-operative day three, those symptoms had largely resolved. Ms. Shumpert is seen in the clinic with

the registered dietitian visit. She indicates that Ms. Shumpert was tolerating a full liquid diet; protein fluid and portions are within normal limits; diet advanced to pureed; patient plans to purchase and begin the CelebrateONE 18 chewable tablets in her one-month post-op RD visit.

On May 24, 2022, Ms. Shumpert presents to the Emergency Department of Advocate Good Shepherd where the history notes that she was discharged approximately five days ago, however, had been unable to tolerate PO without vomiting. Dr. Hoeltgen notes the chief complaints as nausea and vomiting. He states that she continued to tolerate her diet after discharge until two days ago when she started to have nausea with poor oral tolerance. She was hydrated overnight and feels better. Ms. Shumpert was discharged by Dr. Hoeltgen on May 27, 2022.

On June 6, 2022, Registered Dietitian, Melody Peters, spoke with Ms. Shumpert by phone. She notes today patient C/O "not feeling well," drinking about 20 ounces of liquid/day. States feeling like it is, "getting stuck". Dr. Hoeltgen advised a limited intake. Patient has an appointment in his office, however, there is no note of Ms. Shumpert being seen by Dr. Hoeltgen on June 7th.

On June 7, 2022, there is a visit with her PCP, Dr. Christopher Molitor, complaining of fatigue and nausea. The history indicates that she has been having nausea, vomiting, heartburn, tiredness, dizziness and rapid heartbeats occasionally after the surgery, so she should be on a soft diet. However, she is still on liquids because of nausea. She also reported that she was prescribed two more medications today by her bariatric surgeon, which is further evidence of the visit to Dr. Hoeltgen. Again, there is nothing in the record to reflect this. Ms. Shumpert describes her dizziness as "extreme dizziness" and she reported that she thought it could be due to not eating well. She also reported a low blood pressure reading earlier in the surgeon's office of 93/78. She said she was concerned about her decreased appetite.

On June 18, 2022, the labs which were ordered by Dr. Hoeltgen were collected and no thiamine level was ordered, nor was any other vitamin level ordered.

On June 27, 2022, Ms. Shumpert returns again to Advocate Good Shepherd Hospital presenting with nausea and vomiting. She reported that the symptoms had been persistent since Friday, and she says she can't even drink water without vomiting. She feels dehydrated and also reported that she had not had a bowel movement in two weeks and is only on a liquid diet.

The history says that she does have a plan for fluoroscopic upper GI testing ordered by Dr. Hoeltgen. The emergency department physician discussed the case with Dr. Hoeltgen. He recommended continued IV hydration and observation in the hospital. She was given lactated ringers, 1,000 milliliters.

On June 28, 2022, Dr. Hoeltgen notes the chief complaint of oral intolerance and that she had a three-day history of oral intolerance associated with nausea and vomiting. There is no documentation or consideration of vitamin deficiency, and the laboratory evaluation did not include thiamine levels.

During that hospitalization, the registered dietitian noted Ms. Shumpert's malnutrition status as patient with acute severe protein calorie malnutrition as evidenced by less than 50% of

estimated requirements for greater than or equal to seven days; weight loss greater than 5 percent per month.

Dr. Hoeltgen saw Ms. Shumpert on June 29, 2022, where he reported that she was tolerating water orally without difficulty. She states when she has liquids she has some mild dysphagia. He also noted there was not a significant stool burden on CT scan, and that she continues to be a bit nauseated.

Dr. Hoeltgen continued to follow her, and Ms. Shumpert was discharged on July 2, 2022, on a bariatric full liquid diet as tolerated with a return to be seen in 1 to 2 weeks.

After seeing her PCP, Dr. Molitor, on July 14, 2022, Dr. Hoeltgen ordered 2 liters NS infusion. He again signed orders for 2 liters NS on July 18, 2022, which Ms. Shumpert received on July 19, 2022. Ms. Shumpert was hospitalized again on July 22, 2022. She went on to develop Wernicke's Encephalopathy and Korsakoff Syndrome. Wernicke's Encephalopathy is an acute neurological condition caused by lack of thiamine in the brain. Korsakoff Syndrome is the chronic condition which results if thiamine stores are not repleted timely.

The standard of care for a bariatric surgeon who has performed a bariatric procedure on a patient is to maintain a high index of suspicion for nutritional deficiencies for any patient that has nausea, vomiting, or dysphagia and consideration of administration of thiamine for readmission for nausea and vomiting.

Fleshia Shumpert presented multiple times, both at Dr. Hoeltgen's office as well as her PCP's office, with complaints of nausea, vomiting, and inability to take anything by mouth. Dr. Hoeltgen attended to her for the hospitalizations that she had in May and June. He ordered infusion therapy after being notified by Dr. Molitor on July 14th of her complaints of nausea, vomiting, extreme dizziness and low blood pressure. The standard of care required Dr. Hoeltgen to draw a whole blood thiamine to determine her stores and/or provide therapeutic doses of thiamine in the setting of neurologic findings and prolonged nausea and vomiting following bariatric surgery. Dr. Hoeltgen did not do so.

Thiamine deficiency is devastating to the patient but can be prevented. It is water soluble and extremely safe to administer. Unfortunately, Ms. Shumpert developed Wernicke's Encephalopathy and Korsakoff Syndrome.

I expect to review depositions and other materials as the case progresses and reserve the right to modify or supplement this brief overview of my opinions.

June 4, 2024

Kathryn Snapka
**THE SNAPKA LAW FIRM**
500 N. Water St., Suite 700
Corpus Christi, Texas 78401

      Re:    Fleshia Shumpert

Dear Ms. Snapka:

      This will confirm our conversation concerning your client, Fleshia Shumpert. I am a physician licensed to practice medicine and I am Board Certified in Family Medicine. I have been employed as an Emergency Physician and a hospitalist. In my current practice, I see patients in an office setting. I am familiar with managing the nutrition of patients, and preventing deficiencies which can result in significant morbidity and mortality in patients. I am familiar with the standard of care, the methods, the procedures and the treatments relative to the medical issues in this case. Nutrition is actually taught to all physicians early in their medical school training. It is important to note the concern for a patient's nutritional deficiency is not specific to any particular area of medical specialty. A patient's nutritional status is a basic building block of health, and it should be a concern for physicians of every specialty providing care to a patient in post-surgical and hospital settings. Post-bariatric surgery patients are particularly vulnerable to nutritional deficiency, so all medical specialties caring for such patients should be aware of and sensitive to the likelihood of nutrient malabsorption and potential thiamine deficiency.

      I understand this letter is a legal requirement in Illinois to show that the claim is reasonably meritorious. I also understand that this letter is not intended to be a complete statement of all my opinions or reasons for them and that, if I am an opinion witness in this case, I will make a more detailed statement of my opinions and bases as required by Illinois rules. In this letter, I am addressing the conduct of healthcare providers, other than the bariatric surgeon.

      I have reviewed the following materials:

            Shumpert 00001 – 00789 Advocate Good Shepherd Hosp–MR
            Shumpert 00790 – 00811 Advocate Good Shepherd Hosp–BR
            Shumpert 00812 – 01390 Advocate Condell Med Ctr–MR
            Shumpert 01391 – 01407 Advocate Condell Med Ctr–BR
            Shumpert 01408 – 01749 Advocate Medical Group–MR
            Shumpert 01750 – 01768 Advocate Medical Group–BR
            Shumpert 01769 – 02574 Advocate Good Shepherd Infusion Ctr–MR
            Shumpert 02575 – 02596 Advocate Good Shepherd Infusion Ctr–BR
            Shumpert 02597 – 03308 Northwestern Medicine Lake Forest Hosp–MR
            Shumpert 03309 – 03342 Northwestern Medicine Lake Forest Hosp–BR

Shumpert 03343 – 04346 Encompass Health Rehab of Libertyville–MR
Shumpert 04347 – 04364 The Encompass Health Rehab of Libertyville–BR
Shumpert 04365 – 05374 Elevate Care Riverwoods–MR
Shumpert 05375 – 05388 Elevate Care Riverwoods–BR

On May 5, 2022, Fleshia Shumpert visited with Melodi Peters, RD, at Advocate Good Shephard Hospital to go over bariatric vitamins and post-operative diets ahead of a May 11, 2022, laparoscopic sleeve gastrectomy procedure. Their protocol was to start vitamins and protein supplements when the patient goes on a pureed diet after one month. She was admitted for surgery at Advocate Good Shephard Hospital from May 11, 2022, through May 14, 2022. At the time of discharge on May 14, 2022, Fleshia was taking an appropriate amount of bariatric liquids.

On May 19, 2022, Melodi Peters, RD, notes that Fleshia is doing okay and indicates, again, that she will start vitamins one-month post-op.

From May 24, 2022, through May 27, 2022, Fleshia is admitted to Advocate Good Shephard Hospital due to poor oral intolerance. One of the early and obvious signs of B1 deficiency is nausea and vomiting which is exacerbated by rapid weight loss. These complaints were documented. The standard of care is to administer thiamine to any post-bariatric patient admitted to the hospital with persistent nausea and vomiting. Dr. Hoeltgen, the bariatric specialist, consults Fleshia's etiology as unclear. His orders include to discharge her once she tolerates fluids. There are no vitamins on the medication list. There's no mention of Fleshia's B1 having been checked. IV thiamine followed by oral thiamine should have been done empirically. There are no vitamins ordered or suggested upon discharge on May 27, 2022.

Ms. Shumpert is seen by her primary care physician, Dr. Christopher T. Molitor, in follow-up to her hospitalization. Her complaints included nausea, vomiting, heartburn, tiredness, dizziness (characterized as "extreme dizziness"), and rapid heartbeats. The standard of care for a primary care physician who is aware that the patient had bariatric surgery, has had fatigue and dizziness and a recent hospitalization for dehydration is to begin multivitamins and admit for IV thiamine. Instead, he advises her to add salt to her diet. This falls below the standard of care.

From June 27, 2022, through July 2, 2022, Fleshia is again admitted to Advocate Good Shephard Hospital as she is unable to keep water down. Dr. Hoeltgen fails to replenish B1 IV, then orally while checking her B1 level. Fleshia is not able to keep protein shakes down for seven weeks post-op. Lynette Becker, RD, diagnoses Ms. Shumpert as having acute severe protein calorie malnutrition. The standard of care requires administration of thiamine to replete lost stores and prevent Wernicke's Encephalopathy. Fleshia is discharged on a liquid diet. This is seven weeks post-op. During this hospitalization, Ms. Shumpert was followed by Kathleen Cornell-Weld, PA-C, who documented intractable nausea and vomiting, oral intolerance, acute severe protein calorie malnutrition. She noted that RD followed the patient for recommendations on acute severe protein calorie malnutrition, and that trial gelatin fruit punch was recommended.

On July 14, 2022, Fleshia saw Dr. Molitor. Fleshia is weak and can't keep liquids down when she tries to eat or drink. The result is sent to Dr. Hoeltgen who orders the Infusion Center to administer two liters of IV fluids. Dr. Molitor should have admitted Fleshia for thiamine IV B1

followed by oral thiamine as it is now eight weeks post-op. She is unable to keep fluids down. She is experiencing a large amount of weight loss. She is unable to keep protein down. There is no vitamin supplementation. Fleshia is very dizzy at the Infusion Center. This is the beginning of neuro symptoms, and her physician should have recognized this.

On July 22, 2022, Fleshia Shumpert presents to the Emergency Department of Advocate Condell Medical Center where she has a history of gastric sleeve and hiatal hernia repair on May 11 and since that time has been vomiting. She reports vertiginous symptoms for the last 2 weeks. Diet has not advanced beyond clear liquids. She was seen in the Emergency Department by Dr. John Piotrowski. The record states that multiple differential diagnoses were considered but none were specifically listed. Ms. Shumpert was admitted, and there is a note that, "Best Practices has agreed to observe this patient in the hospital." The standard of care when evaluating a patient with this history is to consider nutritional deficiency in the differential. Thiamine deficiency is a medical emergency, and the standard of care is to begin IV thiamine 500 mg three times a day until symptoms resolve.

Maya Gherman, CNP, evaluated Ms. Shumpert as the hospitalist but does not consider nutritional deficiency in the differential nor does she order thiamine repletion, which is required by the standard of care.

Kimberly Nicholson, CNP, sees Ms. Shumpert on July 25, 2022, and notes continued vertigo, but does not consider thiamine deficiency, nor does she order thiamine as required by the standard of care.

On July 26, 2022, Rita Ramaiya, PT, notes nystagmus and documents this. Also notes patient with nausea, dizziness, room spinning, vertigo. Kimberly Nicholson, CNP, sees Ms. Shumpert on July 26, 2022, and notes still with vertigo and no changes in plan of care other than PT for vestibular therapy.

On July 27, 2022, Amy Christine Wlodek, CNP, stated patient still complains of room spinning and nystagmus. Spoke with neurology PA, Andrew Grover, who recommended an MRI (although there is no note by neurology). There are two registered dietitians who are listed as providers. Their names are Nicolette Cierpiala, RD, and Leah Woock, RD. Illinois permits registered dietitians to order thiamine, or any other nutritional intervention. The standard of care required them to assess Ms. Shumpert's nutritional status and recommend and/or order IV thiamine three times daily until symptoms resolved. These registered dietitians fell below the standard of care in failing to do so.

From August 4, 2022, through August 15, 2022, Fleshia is admitted to Northwestern Medicine Lake Forest Hospital by EMS. She is exhibiting mental status changes, she is confused on the floor acting like she can't hear them, she has memory issues, background noises are amplified, she can't hear voices. Fleshia doesn't remember where she works or if she had weight loss surgery. She can't lift her legs into bed without assistance. On August 5, 2022, a neurology consultant, Emily Roberts, APRN, CNP, administers empiric B1, 500 milligrams via IV times three days with oral to follow.

Dr. Nell Nadkarni, Neurologist, suspects Fleshia's B1 deficiency and inability to tolerate anything by mouth for months is from her recent sleeve procedure.

On August 13, 2022, Dr. Anub Abraham diagnosed Ms. Shumpert with Wernicke-Korsakoff Syndrome.

Fleshia then goes to a rehabilitation facility and then a nursing home.

On September 3, 2022, Fleshia failed a boarding trial and needs a Hoyer lift. She can't bathe herself, clothe herself, ambulate, perform a toilet transfer, she is very emotional and forgetful.

On September 19, 2022, a neuropsychological evaluation shows severe memory impairment and executive functioning consistent with Alzheimer's dementia.

On September 28, 2022, Fleshia requires total assistance for activities of daily living. Her significant memory problems are on-going.

Dr. Molitor, Best Practices acting through their agents, servants, and employees, including but not limited to, Dr. Mazin Fatthouhi, Maya Gherman, CNP, Kimberly Nicholson, CNP, and Amy Christine Wlodek, CNP, and Advocate Condell acting through its agents, servants and employees, including, but not limited to Nicolette Cierpiala, RD, and Leah Woock, RD, should have recognized that Fleshia Shumpert was not receiving vitamins and was severely malnourished. Her failure to receive adequate nutrition, generally, and thiamine in particular, led to the development of Wernicke's Encephalopathy. If the registered dietitians, hospitalists or primary care physicians had administered therapeutic levels of thiamine at any time through July 28, 2022, Ms. Shumpert would have at a minimum, stopped the deterioration and likely have improved without permanent brain damage and her permanent physical problems.

I expect to review depositions and other materials as the case progresses and reserve the right to modify or supplement this brief overview of my opinions.